**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
WILLIAM A. MORALES, REVLON MCCOY,
SHERMAN TAYLOR, JOSE B. MOLINA,
OPHELIA MOSELEY, WINSTON HILL,
DUANE DOTSON, PATRICK JABBOUR,
ANN FOLLON, and CATHY BRINSON
individually and on behalf of all other persons
similarly situated,

                          Plaintiffs,

                 - against -

RICHARD DORMER in his official capacity
as Commissioner of the Suffolk County Police
Department, THOMAS SPOTA in his official
capacity as District Attorney of Suffolk County,
and COUNTY OF SUFFOLK,

                        Defendants.
--------------------------------------------------------------X

                                   **REPORT AND**
                                   **RECOMMENDATION**

                                 CV 08-4270 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     **Pʀᴇʟɪᴍɪɴᴀʀʏ Sᴛᴀᴛᴇᴍᴇɴᴛ**

       This litigation, styled as a class action, is brought pursuant to 42 U.S.C. § 1983 ("Section

1983") based on allegations that Defendants violated Plaintiffs' Fourth and Fourteenth

Amendment rights under the Constitution by seizing and retaining their property and failing to

comply with Suffolk County law. At issue specifically is Suffolk County Local Law § 270-26

which addresses the use of forfeiture for misdemeanor criminal activity. The Plaintiffs here are

individuals whose vehicles or other property have been seized as arrest evidence or as

instrumentalities of a crime.

At this time, Plaintiffs appear to be seeking a form of interim relief while this action is pending. Plaintiffs' counsel filed a letter requesting a pre-motion conference before Judge Bianco "to discuss the release of the plaintiffs' property in the custody of the defendants pending the prosecution of this case" [DE 11]. Specifically, the dispute arises from the parties' disagreement concerning how Suffolk County Local Law § 270-26 is being implemented with regard to these Plaintiffs. By Order dated January 13, 2009, Judge Bianco referred to me "the issue of the release of plaintiffs' property referenced in [Plaintiffs'] letter." *See* Electronic Order, Jan. 13, 2009. I have reviewed Plaintiffs' letter [DE 11] along with the following additional written submissions: (1) Defendants' January 6, 2009 letter opposition [DE 13]; (2) Plaintiffs' January 8, 2009 letter in reply [DE 14]; and (3) Defendants' February 19, 2009 letter supplement (forwarded at the invitation of the Court) [DE 19]. In addition, the parties appeared before me on two separate occasions and presented oral argument in support of their respective positions. Finally, I have reviewed in detail the applicable case law in this Circuit and in New York State, as set forth below.

For the reasons delineated here, I respectfully recommend to District Judge Bianco that Plaintiffs' motion be DENIED as premature, and without prejudice, to the extent outlined in greater detail in this Report and Recommendation.

## II. BACKGROUND

### A. Plaintiffs' Initial Allegations and Defendants' Response

Plaintiffs claim that Defendants have seized and continue to retain their motor vehicles and U.S. currency. Plaintiffs purport to represent a class of persons who have had their property seized and retained by Defendants "without a prompt seizure and/or retention hearing within the

County of Suffolk, State of New York, within the past several years . . . ." Compl. ¶ 14.

Though the alleged factual circumstances of each of the ten named Plaintiffs differ somewhat, I

have grouped the allegations into four categories, as follows.

**1. *Seizure of Property Relating to Arrests for Violations of New York Vehicle and Traffic Law***

Plaintiffs Morales and McCoy were arrested by the Suffolk County Police Department in

separate incidents and were charged with violating New York Vehicle and Traffic Law ("VTL")

§ 511(2),[1] aggravated unlicensed operation of a motor vehicle in the second degree. Plaintiff

Jabbour was charged under VTL § 511(1), aggravated unlicensed operation of a motor vehicle in

the third degree. Compl. ¶¶ 17, 23, 59. In addition, Morales was further charged with violating

VTL § 1192(3), driving while intoxicated, and McCoy was charged with violating VTL

§ 1192(4), driving while ability impaired by drugs. Compl. ¶¶ 17, 23. At the time of the arrests,

Defendants took possession of the motor vehicles of Morales and McCoy and also took

possession of $6,029 in currency that belonged to Jabbour. *Id.* ¶¶ 18, 24, 60. All three Plaintiffs

allege that Defendants have retained possession of their property and have not served them with

written notices of seizure or notices of forfeiture proceedings. *Id.* ¶¶ 19-21, 25-27, 61-63.

The seizure of Plaintiff Morales' motor vehicle was mandated by statute, according to

Defendants' counsel, since Morales was arrested for violating VTL § 511(2) and, "upon

compliance with the statute by the owner, the car will be released and returned" [DE 13].

Defendants' counsel further noted that a grand jury handed up an indictment against Plaintiff

McCoy, that his motor vehicle has been held as evidence to be used during his pending trial in

---

[1]     The Complaint refers to these charges as " § 511.02." However, *McKinney's Consolidated Laws of New York Annotated* lists this section as 511(2).

County Court and that "after the trial, a decision shall be made concerning its release." *Id.*

### 2. Seizure of Property Relating to Arrests for Violations of Criminal Possession of Controlled Substances

Plaintiffs Taylor and Hill were arrested by the Suffolk County Police Department, in separate incidents, for criminal possession of a controlled substance in the third degree and the fifth degree respectively. Compl. ¶¶ 29, 47. The Police Department seized both Plaintiffs' motor vehicles and also seized currency in the possession of Plaintiff Hill. *Id.* ¶¶ 30, 48. Both Plaintiffs allege that Defendants have retained possession of their property and have not served them with written notices of impound or seizure or with notices of forfeiture proceedings. *Id.* ¶¶ 31-33, 49-51.

In responding to these claims, Defendants' counsel states that separate indictments were handed up by grand juries against Taylor and Hill [DE 13]. Defendants' counsel further asserts that the District Attorney's office already sent a release for Plaintiff Hill's vehicle to its registered owner. A release for Plaintiff Taylor's vehicle will be provided "upon the written request by the registered owner." *Id.*

### 3. Seizure of Vehicles Relating to Arrests for Other Criminal Activity

Plaintiffs Molina and Dotson were arrested by the Suffolk County Police, in separate incidents, and were charged respectively with tampering with physical evidence and assault in the second degree. Compl. ¶¶ 35, 53. Both Molina and Dotson had their motor vehicles seized by Defendants, *id.* ¶¶ 36, 54, and both allege that Defendants have retained possession of their property and have not served them with written notices of seizure or of forfeiture proceedings. *Id.* ¶¶ 37-39, 61-63.

According to Defendants' counsel, Plaintiff Dotson was indicted for criminal assault and his vehicle has been retained "as it is both the instrumentality of the crime at issue and is evidence in the underlying criminal proceeding in which Dotson is charged with an assault by using the car to run over a victim" [DE 13]. As to Plaintiff Molina, Defendants have not provided a written response.

### 4.     *Seizure of Motor Vehicles When Owners Were Not Arrested*

The Suffolk County Police seized and retained the motor vehicles of Plaintiffs Moseley, Follon and Brinson, but these Plaintiffs were not arrested. *See* Compl. ¶¶ 41, 65, 72. These three Plaintiffs maintain that the Suffolk County Police did not provide them with written notices of seizure or forfeiture proceedings. Plaintiff Moseley asserts that her vehicle, a Chrysler which she rented from Budget Rent A Car System, was seized and then released several weeks later, without a hearing. *Id.* ¶¶ 42-45, 66-69, 73-76.

In response, Defendants' counsel states that Plaintiff Follon's vehicle was seized and retained in connection with the arrest of Plaintiff Jabbour, *see also id*. ¶ 65, "as evidence under an active criminal investigation" [DE 13]. The District Attorney, however, "will now release this car upon the written request by the registered owner to their office." *Id.* Defendants have not made any representation regarding Plaintiff Brinson's property.

### B.     <u>Return of Certain Vehicles and Currency</u>

According to the Complaint, and as corroborated by Defendants' counsel, the motor vehicles of certain Plaintiffs were subsequently released by Defendants. For example, Plaintiff Morales received notice that his motor vehicle was impounded and would be available when he "obtain[ed] a release from the Suffolk County District Attorney's Office or a court order along

with the payment of fees for storage and towing." Compl. ¶ 22.  Plaintiff Moseley's motor vehicle – the rental from Budget – was released to her without a hearing, although Plaintiff Moseley asserts that she incurred expenses as a result of the retention.  *Id.* ¶ 46.  Plaintiff Brinson's leased Toyota Highlander was released to the lien holder without a hearing, but Brinson also claims she incurred expenses as a result of the retention.  *Id.* ¶ 77.  During the July 9, 2009 hearing before me, Plaintiffs' counsel also advised that Plaintiff McCoy's motor vehicle had been released and that Plaintiff Hill's motor vehicle had been released to the lien holder but that Plaintiff Hill was still responsible not only for the monthly car payments during the time Defendants retained possession of the vehicle but for the balance of the car loan as well.  Finally, Plaintiffs' counsel stated that Plaintiff Jabbour's property (U.S. currency) had been released.

Overall, the Complaint seeks the following relief: (1) a decree that Defendants violated Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments, in violation of Section 1983; (2) judgment against Defendants for money damages in the amount of  $10 million; (3) entry of judgment requiring Defendants "to conduct a prompt hearing following the seizure of the property at which time the defendants must demonstrate probable cause for the seizure of the property and that it was necessary that the property remain in the custody of the defendants," pursuant to *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) (Compl., WHEREFORE Clause ¶ 3); and (4) costs and attorneys' fees, together with other relief as the Court deems proper.

## C.    The Parties' Positions at Oral Argument

Counsel for the parties presented the following additional information during the February 27 and July 9, 2009 hearings.[2]  Plaintiffs' counsel stated that Defendants do not have any procedure in place that allows for the conduct of a hearing regarding the validity or necessity of the retention of his clients' property and that Defendants do not issue vouchers when property is retained, as is the practice in New York City.  However, Plaintiffs' counsel acknowledged that an individual whose property was seized incident to his arrest could make a motion for such a hearing in criminal court.  Nevertheless, Plaintiffs' counsel argued that there should be an *automatic* procedure in place to request a post-seizure hearing.  For example, counsel argued that during an arraignment, the arrested party should be given notice of Defendants' intention to keep the property and then the arrestee should have the opportunity to request a hearing.  Moreover, Plaintiffs' counsel questioned whether so-called "innocent owners" – those who had their motor vehicles or property seized in circumstances where no arrest was made – would even have standing to request a hearing in criminal court.  Finally, Plaintiffs' counsel contended that this entire process has become a "major issue" in Suffolk County.  Essentially, Plaintiffs' counsel argued that Defendants have used the seizure and retention of property as a mechanism to gain leverage to obtain plea deals.  Numerous individuals have been told by Defendants, according to Plaintiffs' counsel, that their motor vehicle and/or property will be retained by Suffolk County and will not be returned until they enter a plea.  While some of the named Plaintiffs have

---

[2]      While counsel for both sides spoke at great length, no affidavits or other documentary support for their arguments were introduced into the record.

admittedly received back their property, Plaintiffs' counsel maintains that there are numerous other individuals and attorneys who have approached him with similar claims.

Defendants' counsel, on the other hand, informed the Court that due process hearings regarding property that has been seized and retained by Suffolk County are, in fact, held three times per week in Westhampton, Riverhead, and Central Islip. The hearings are presided over by a Justice for Hire ("JOH"). Defendants' counsel stated that, in cases where motor vehicles have been seized and retained, approximately 25% of owners appear to contest the seizure and retention. These are usually "innocent owners" who did not know, for example, that their child was driving the vehicle while under the influence of alcohol. Defendants' counsel represented that, in such circumstances, the JOH will usually release the vehicle subject to certain conditions. The procedure is simple, according to Defendants' counsel: a person whose property is retained in connection with his arrest need only make an *omnibus* motion by order to show cause before the judge in the criminal proceeding if he believes the District Attorney's office is retaining property that does not constitute evidence. Moreover, Defendants' counsel asserted that an "innocent owner" whose property was retained in connection with someone else's arrest would have standing to intervene and file such a motion in the criminal court. In short, Defendants' counsel maintained that due process hearings are routinely held pursuant to a system that is quite well-developed. According to Defendants' counsel, Plaintiffs merely wish to "pry" into the thought-process of the District Attorney's office and gain insight into the use of its wide discretion to hold items believed to be evidence.

Having heard from counsel for both sides, it is obvious to the Court that there is a factual dispute with regard to whether notice of seizure is being disseminated to vehicle owners and

whether owners of seized vehicles or property have the opportunity to request/appear at post-seizure retention hearings.

## III.    LEGAL STANDARD

Plaintiffs rely almost entirely in this action on a line of decisional authority in the Second Circuit which has come to be known as the "Krimstock" cases.[3]  *See Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) ("*Krimstock I*").  Defendants, however, argue that *Krimstock* "has nothing to do with the facts of the seizure of the vehicles and the subsequent retentions thereof in this matter" [DE 19].  Counsel notes that

> *Krimstock* concerns itself with the City of New York maintaining possession of vehicles for the sole purpose of civilly forfeiting those vehicles at a subsequent time without providing a hearing.  Additionally, *Krimstock* specifically refers only to innocent owners, who have an interest in the property, but no connection to the underlying criminal activity.
>
> In connection with the above, the County adopted Local Law No. 7-2004 and routinely provides hearings for all such innocent owners.  These are not the plaintiffs in this case.

*Id.*  In order to resolve this aspect of the dispute in light of the relief requested by Plaintiffs, it is necessary to have some preliminary understanding of what the *Krimstock* decisions actually address.

### A.    **The Parameters of *Krimstock***

In *Krimstock I*, the defendant City of New York, acting pursuant to New York City's forfeiture statute, N.Y.C. Admin. Code § 14-140, engaged in the practice of seizing motor vehicles from individuals who were accused of driving while intoxicated ("DWI") and/or of

---

[3]    *See Jones v. Kelly*, 378 F.3d 198, 200, 201 (2d Cir. 2004) ("*Krimstock II*"); *Krimstock v. Kelly*, 464 F.3d 246, 250 (2d Cir. 2006) ("*Krimstock III*").

committing other crimes "for which a motor vehicle could be considered an instrumentality." *Id.* at 43-44. The City retained possession of the vehicles as the first step towards obtaining title in a subsequent civil forfeiture proceeding. Such process could take "months or even years to be finalized" since it often hinged on the resolution of criminal charges. *Id.* at 44. There was no practice in place, either through New York criminal procedures or New York City's forfeiture statute that "allow[ed] a DWI defendant or the owner of a vehicle driven by a DWI defendant to challenge promptly the legitimacy of the City's continued custody of the vehicle." *Id.* at 45. The Second Circuit agreed with the plaintiffs that "their inability to challenge, promptly after the vehicles are seized, the legitimacy of and justification for the City's retention of the vehicles prior to judgment in any civil forfeiture proceeding violates their constitutional rights." *Id.* at 44.

The Court found as follows:

> [A] warrantless arrest by itself does not constitute an adequate, neutral "procedure" for testing the City's justification for continued and often lengthy detention of a vehicle which may be owned by the arrestee or by someone entirely unconnected with the conduct that gave rise to the arrest. Further, to say that the forfeiture proceeding, which often occurs more than a year after the vehicle's seizure, represents a meaningful opportunity to be heard at a meaningful time on the issue of continued impoundment is to stretch the sense of that venerable phrase to the breaking point.

*Id.* at 53. Moreover, the court found that an Article 78 proceeding "does not provide a prompt and effective means for claimants to challenge the legitimacy of the City's retention of their vehicles." *Id.* at 60.

The court in *Krimstock I* balanced three factors outlined by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to "evaluate the adequacy of process offered in post-seizure, pre-judgment deprivations of property in civil forfeiture proceedings": (1) the

private interest involved; (2) the risk of erroneous deprivation through the procedures used as well as the value of other safeguards; and (3) the government's interest. *Krimstock I*, 306 F.3d at 60. After balancing these factors, the court in *Krimstock I* found that the proper remedy to ensure due process was to require that "claimants be given a prompt post-seizure retention hearing, with adequate notice, for motor vehicles seized as instrumentalities of crime pursuant to N.Y.C. Code § 14-140(b)." *Id.* at 68-69. The court did not specify the format for this hearing, but noted that the hearing was not meant to be a "forum for exhaustive evidentiary battles that might threaten to duplicate the eventual forfeiture hearing." *Id.* at 69. Rather, the hearing should encompass "an initial testing of the merits of the City's case," and should allow for a consideration of "whether less drastic measures than continued impoundment, such as a bond or a restraining order, would protect the City's interest in the allegedly forfeitable vehicle during the pendency of proceedings." *Id.* at 70. The court remanded the matter to the district court to determine whether the class should be certified pursuant to Fed. R. Civ. P. 23 "and to formulate, in consultation with the parties, the appropriate injunctive relief needed to redress the constitutional violations examined in this opinion." *Id.* at 70-71.

Importantly, the *Krimstock I* court noted in footnote 32 that the parties had agreed that the vehicles at issue had been seized as instrumentalities of the crime, rather than as "arrest evidence." *Id.* at 69 n.32. According to the court, "[i]n any event, it is hard to imagine how an arrestee's vehicle could serve as evidence in the ordinary DWI case." *Id.*

Following the remand, the district court in October 2003 circulated a draft order[4] for the parties' comment "that established a hearing for vehicles seized as arrest evidence *or* as an instrumentality of a crime." *Jones v. Kelly*, 378 F.3d 198, 200, 201 (2d Cir. 2004) (emphasis added) ("*Krimstock II*"). Such hearings would be conducted through the Office of Administrative Trials and Hearings ("OATH"). *Id.* at 200. The draft order also required notice of the hearing to be given to the appropriate district attorney and authorized an OATH judge "to order continued retention of vehicles when necessary to ensure their availability as evidence." *Id.* at 201. An order by an OATH judge releasing the vehicle "could be nullified by an order of a Justice of the New York Supreme Court or a Judge of the New York City Criminal Court that designated the vehicle as arrest evidence." *Id.* Finally, "no vehicle could be released without its driver waiving all claims and defenses in the criminal proceeding alleging a defect in the vehicle or other factual assertion based on the vehicle's condition at the time of seizure." *Id.*

As the court in *Krimstock II* noted, "[t]he parties and *amicus* New York State District Attorneys Association argue[d] forcefully and eloquently for, and against, the district court's order." *Id.* at 201. In particular, the parties contested the propriety of including provisions for a *Krimstock* hearing for vehicles seized both as instrumentalities of a crime *and* as arrest evidence. *Id.* at 202-03. The City "worrie[d] that the district court's order will single out New York City for broader and more cumbersome procedures because it includes arrest evidence." *Id.* at 202. Plaintiffs supported the district court's draft order and raised a concern that "[a] cynic might speculate that the City, in response to [*Krimstock I*'s] footnote 32's clarification that arrest

---

[4]        An original draft order was circulated in September 2003 and was amended to address the parties' concerns. *Krimstock II*, 378 F.3d at 200-01.

evidence seizures were not covered by this Court's earlier opinion, simply altered the basis for

holding the vehicles in question in an attempt to thwart this Court's efforts." *Id.* at 203.

The Second Circuit noted that the district court "made no finding as to the necessity of

including arrest evidence in its [October 2003] order." *Id.* at 203. The *Krimstock II* court

"share[d] the skepticism expressed in footnote 32 by our brother and sister judges in *Krimstock I*.

It remains hard for us 'to imagine how an arrestee's vehicle could serve as evidence in the

*ordinary* DWI case.' There will always be extraordinary cases, but we tend to agree with our

colleagues – they probably are very few in number." *Krimstock II*, 378 F.3d at 204 (internal

citation omitted) (emphasis in the original). However, the court in *Krimstock II* found that:

> Because there are no established "facts" in this case, we are left with
> supposition and innuendo. Is the City's concern that criminal
> prosecutions will be encumbered by post-seizure hearings that include
> arrest evidence legitimate or imagined? Is the City contumacious or
> cautious? We cannot tell. Thus, we are compelled to remand this
> matter to the district court to establish a record of the actual number
> of vehicles involved in current prosecutions as trial evidence, and,
> perhaps, to compare relevant figures for past prosecutions over an
> appropriate period of time.

*Id.* at 204. Thus, the court in *Krimstock II* affirmed the district court's order as it related to "cars

held for forfeiture," but vacated and remanded the order as it related to "cars held as arrest

evidence," because such portion of the order "was premised on assumptions and conclusions that

have not yet been tested in a hearing." *Id.*

In April 2005, the district court conducted a hearing during which the District Attorneys

presented evidence through the testimony of two witnesses. *Krimstock v. Kelly*, 464 F.3d 246,

250 (2d Cir. 2006) ("*Krimstock III*"). Upon consideration of this evidence, the district court

modified the October 2003 order "to provide that a *Krimstock* hearing would not go forward if a

district attorney sends prior written notice to the OATH judge that the vehicle in question is needed as potential evidence in a pending criminal matter. Thus a district attorney could unilaterally decide that a vehicle is needed as evidence and forestall any hearing on the legitimacy of the arrest, seizure, and continued retention." *Id.* at 250. Plaintiffs appealed the ruling.

On appeal, the court in *Krimstock III* noted that "the retention of a vehicle implicates both Fourth and Fourteenth Amendment rights." *Id.* at 250. With respect to its analysis regarding the Fourth Amendment, the court noted that "[c]ourts have . . . subjected a prosecutor's assertion that evidence is necessary for a criminal investigation to scrutiny for reasonableness." *Id.* at 251. The court noted that: (1) neither of the witnesses presented by the District Attorney before the district court could identify any instances in which adverse consequences resulted from requiring *Krimstock* hearings for vehicles retained as evidence; (2) both witnesses confirmed that it was not difficult for the District Attorney to obtain an *ex parte* retention order that would prevent the release of the vehicle; and (3) the October 2003 order "had not yet encumbered any prosecutions." *Id.* at 252.

Based on this evidence, the *Krimstock III* court concluded that "no undue burden on criminal enforcement results from mandated review by a neutral fact-finder" of the retention of vehicles as arrest evidence. *Id.* However, the court emphasized that "no full-dress adversarial hearing is required to review a prosecutor's unilateral determination that a vehicle is needed as potential evidence, and that district attorneys must be permitted to seek retention orders *ex parte* so that defendants cannot use the hearings for discovery or to restrict the prosecution's theories at trial." *Id.* at 253.

With respect to an analysis under the Fourteenth Amendment, the court said that the *Mathews v. Eldridge* factor-balancing test, which had been applied by the court in *Krimstock I*, also applied in the context of "the deprivation of property *pending* a criminal proceeding; and the challenger may be an innocent owner who is no party to the criminal proceeding." *Id.* at 254. According to the court in *Krimstock III*, a balance of the *Mathews v. Eldridge* factors "weighs in favor of having review by a neutral fact-finder of a prosecutor's decision to retain a vehicle as potential evidence – although no adversarial hearing is required." *Id.* The court vacated the district court's order "insofar as it allowed District Attorneys to decide unilaterally that a vehicle could be retained as potential evidence, and remanded for further proceedings consistent with its opinion. *See Krimstock v. Kelly*, 506 F. Supp. 2d 249, 253 (S.D.N.Y. 2007) ("*Krimstock IV*").

Thus, two issues were before the district court on remand after *Krimstock III*. First, Judge Baer was charged with "fashion[ing] procedures to govern the District Attorney's retention of vehicles as evidence in a criminal proceeding." *Krimstock IV*, 506 F. Supp. 2d at 254. Second, Judge Baer addressed the plaintiffs' proposed changes, which had been submitted in the interim, "to the applicable procedures that govern vehicles seized as an 'instrumentality of a crime.'" *Id.* With respect to the first issue (the District Attorney's retention of vehicles as evidence in a criminal proceeding), Judge Baer found that an Assistant District Attorney "may approach a Criminal Court Judge or Supreme Court Justice *ex parte* for . . . a retention order that would allow the District Attorney to hold the vehicles as evidence." *Id.* at 254. Such application must include an affirmation that (1) lists the reasons for the retention and shows "they relate to the contested issue in the underlying criminal proceeding; and (2) states "that no other means besides impoundment . . . will suffice to preserve the evidentiary value of the vehicle." *Id.* Judge Baer

further ruled that if such retention order were granted, claimants must be provided with an opportunity for a hearing "wherein they may move to vacate or amend the retention order via a challenge to the legitimacy or necessity of the continued retention of the vehicle as evidence." *Id.* at 256. Accordingly, when a retention order is granted, the District Attorney must send a copy of that order to a claimant who made a demand, and such claimant may request that a hearing be held within 30 days of service of the motion. *Id.*

With respect to the second issue before Judge Baer (the seizure and retention of vehicles as instrumentalities of a crime), plaintiffs produced evidence of "'widespread non-compliance' by the NYPD with respect to their obligation to provide notice of *Krimstock* hearings." The NYPD disputed those contentions. *Id.* at 257. Judge Baer took note of the parties' factual disputes, but rejected plaintiffs' proposal to "shift the initial burden to show service of adequate notice" of *Krimstock* hearings to the NYPD. *Id.* at 257-58. "[C]ivil procedure doctrine does not generally provide for shifting the initial burden to show service of notice to the petitioner," and a claimant's "procedural rights are safeguarded here by their ability to raise a lack of notice defense in a *Krimstock* hearing." *Id.* at 258. Judge Baer did find, however that (1) the notice of a *Krimstock* hearing should "contain notice that the claimant may have an 'innocent owner' defense to the forfeiture action," *id.*, and (2) the NYPD's petition to retain the vehicle, which it sends to OATH, must contain a "short and plain statement of the matters to be adjudicated, and a reference to the particular section of the law and rules involved," as well as a specification of "the incident, activity, or behavior at issue." *Id.* at 259.

In the midst of the ongoing *Krimstock* "saga," the New York Court of Appeals was "asked to consider the validity of Nassau County's civil forfeiture statute." *County of Nassau v.*

*Canavan*, 1 N.Y.3d 134, 137 (N.Y. 2003). In *Canavan*, the defendant's car was seized incident

to her arrest for driving while intoxicated, speeding, and failing to signal. The defendant was

"given notice of the possibility that the car might be forfeited to the County of Nassau" and the

car was impounded and remained so during the pendency of the criminal action. Upon the entry

of the defendant's guilty plea, the defendant demanded the return of the car and the County

"commenced a civil forfeiture action under Nassau County Administrative Code § 8-7.0(g)(3)."

*Id.*

The defendant in *Canavan* alleged that the Code provision at issue had multiple

procedural defects, including the fact that "by not affording her a hearing prior to the seizure of

her car, the Administrative Code provision deprived her of property without due process of law."

*Id.* at 141. The Court found that a pre-seizure hearing was not required because:

> [i]n the context of lawful arrests for driving while intoxicated,
> immediate seizure by the police of a defendant's car – the
> instrumentality of the crime of drunk driving – helps to secure
> important public and governmental interests in ensuring both safety
> on the roads and the enforceability of any subsequent forfeiture order.

*Id.* at 142. However, the Court of Appeals found that "[a]fter the County took possession of the

vehicle . . . due process required that a prompt retention hearing be provided." *Id.* The court

found that a balance of the *Mathews v. Eldridge* factors required that post-seizure hearings be

"routinely provided" and concluded as follows:

> [A]fter balancing these considerations, . . . due process requires that
> a prompt post-seizure retention hearing before a neutral magistrate be
> afforded, with adequate notice, to all defendants whose cars are
> seized and held for possible forfeiture. At such a hearing, the County
> must establish that probable cause existed for the defendant's initial
> warrantless arrest, that it is likely to succeed on the merits of the
> forfeiture action, and that retention is necessary to preserve the

vehicle from destruction or sale during the pendency of the proceeding . . . We hold today that due process requires that prompt post-seizure hearings be provided to all defendants whose vehicles are seized and held for forfeiture, not merely those who request them.

*Id.* at 144-45.

## B. Suffolk County Local Law 270-26

As part of Chapter 270 of the Suffolk County Code, Article IV, Forfeiture of Property Used in or Obtained Through Crime, was adopted in 1999 by Local Law No. 18-1999. The purpose of the law was to "enact a comprehensive personal property forfeiture statute to be used in connection with prosecution of certain misdemeanors within the County of Suffolk in a manner that is consistent with constitutional safeguards of property rights." Laws of Suffolk County, New York, v85, Part IV, Chapter 270, Article IV, n.1 (2009). The law applied to "any misdemeanors committed on or after the effective date of this law." *Id.* Article IV was amended in its entirety in 2004 by Local Law No. 7-2004, which provided as follows:

> This Legislature hereby finds and determines that Local Law 18-1999, as amended, frequently known as the "DWI Seizure Law," proved to be [a] strong deterrent to drunk drivers. This Legislature also finds and determines that this law was aimed specifically at repeat offenders of New York's drunk driving laws and it is necessary to amend Chapter 270 of the Suffolk County Code to maintain the statute's effectiveness and assure consistency with the federal and state constitutions and recent court decisions.

*Id.* at n.2. One of those "recent court decisions" was *Krimstock I* which was decided in 2002.

Section 270-26 of the Suffolk County Code provides that any property which constitutes (1) proceeds of an offense, (2) substituted proceeds of an offense, or (3) an instrumentality of an offense "shall be seized by any peace officer . . . upon probable cause to believe that an offense, as defined in this article, has been committed, and may be forfeited as hereinafter provided."

Suffolk County Local Law § 270-26(A). The statute also provides that notification of such

seizure shall be sent to all owners and registrants within five business days of the seizure. *Id.* at

§ 270-26(B)(1). This provision further states that:

> Such notification shall inform the recipient that there will be a
> hearing promptly scheduled before a neutral Magistrate to determine
> whether probable cause existed for the defendant's warrantless arrest,
> whether the County is likely to succeed on the merits of the forfeiture
> action, whether retention is necessary to preserve the vehicle from
> destruction or sale during the pendency of the forfeiture proceeding,
> and whether any other measures would better protect the County's
> interest during the proceedings . . . .

*Id.* If the "seizing agency has met its burden of proof, the neutral Magistrate shall authorize the

continued retention of the property by the seizing agency pending a judicial determination of any

civil forfeiture action." *Id.* The statute also provides that "[n]othing herein shall be construed to

preclude a party with a legal interest in the seized property from commencing an action or

proceeding in a court of competent jurisdiction for its return." *Id.* at § 270-26(B)(2).

## IV. DISCUSSION

### A. Purpose of the Proposed Motion

During oral argument and in response to the Court's questioning, Plaintiffs' counsel

emphasized that Plaintiffs are not asking this Court to conduct due process hearings. Rather,

Plaintiffs make a two-part argument. First, while Plaintiffs acknowledge that Suffolk County

Local Law 270-26 provides for notification of seizure within five days and a "promptly"

scheduled hearing, Plaintiffs contend that this statute only comes into play when an individual's

property is seized and retained in connection with an arrest for DWI. Moreover, Plaintiffs claim

that there is a serious problem regarding a lack of enforcement of the prompt hearing provisions of this Local Law.

Second, Plaintiffs argue that the procedure currently utilized in Suffolk County – namely, the fact that there is no mechanism in place to allow for a hearing after an individual's property is seized and retained – should be declared a violation of the Constitution. Plaintiffs maintain that in all instances in which an individual's motor vehicle or other property is seized and retained by Defendants (whether such seizure/retention occurs in connection with an arrest for DWI, when there are drugs found in the motor vehicle, or when there is no arrest at all), a due process hearing should be held. Plaintiffs further assert that due process requires such a hearing be held even when a motor vehicle is seized and retained as evidence of a crime. According to Plaintiffs, the Second Circuit held in *Krimstock I* that the requirement for a due process hearing before an individual's property can be retained is not satisfied by a "probable cause" hearing, as Defendants contend [*see* DE 14].

The purpose of Plaintiffs' pre-motion conference letter, according to Plaintiffs' counsel, is for leave to make a motion for the entry of an order directing that due process hearings be held immediately regarding Defendants' retention of Plaintiffs' property, or that such property be released during the pendency of the instant action.

Defendants assert that Plaintiffs' action is not truly meant as a challenge to local law. According to Defendants, this lawsuit has been brought merely in an attempt to "pry" into the thought-process of the District Attorney's office and to gain some insight as to the District Attorney's exercise of its wide discretion to determine whether property will be retained as evidence of a crime. Defendants contend that "[g]enerally, the cars were seized in these cases

20

pursuant to (1) the Vehicle Traffic Law Section 511(b); (2) The Public Health Law Section 3388; (3) impoundment, in that the vehicle is connected to criminal activity to the degree that the property is considered to have been used as a means of committing a crime or employed in the aid of the furtherance of a crime; and (4) the claim that such property is evidence in the prosecution of the crime committed [DE 13]. Defendants' counsel also stated during oral argument that there is no case law requiring a due process hearing in the case of property being retained as evidence of a crime.

### B.    Further Analysis

In reviewing this application, Plaintiffs were given several opportunities to articulate the exact nature of the interim relief they seek. Based upon the two appearances before the Court on this issue, the clearest determination the Court can make is that Plaintiffs are seeking (1) an order directing "the seizing agency" to send notice to those Plaintiffs whose vehicles have been seized in accordance with Suffolk County Code § 270-26, and (2) an order directing the Suffolk County agency or office responsible for scheduling post-seizure hearings in accordance with Suffolk County Code § 270-26 to immediately schedule such hearings for those Plaintiffs who claim their vehicles have not yet been returned. In other words, it appears that Plaintiffs want this Court to order Suffolk County to do what the County's Local Law already requires it to do -- and what Defendants contend the County is, in fact, doing.

As this Court has listened to the representations and arguments of counsel, I interpret Plaintiffs' application as seeking an interim remedy which appears to be injunctive in nature. The Second Circuit classifies the typical preliminary injunction as "prohibitory" in that such an injunction generally seeks only to maintain the status quo between the parties pending a trial of

the action on the merits. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 24 (2d Cir. 1995); *Great Earth Int'l Franchising Corp. v. Milks Development, Inc*, 302 F. Supp. 2d 248, 251 (S.D.N.Y. 2004). On the other hand, an injunction is deemed "mandatory" if it alters the status quo by commanding some positive act. *See, e.g., Christian v. Alloy, Inc.,* No. 03-CV-12058, 2004 WL 1375274, at *2 (S.D.N.Y. Jun. 17, 2004)*; M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha,* 250 F. Supp. 2d 91, 100 (E.D.N.Y. 2003); *Left Bank Co. v. Elliman-Gibbons & Ives, Inc.*, No. 99-CV-11251, 1999 WL 1114745, at *1 (S.D.N.Y. Dec. 7, 1999); *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 276 (S.D.N.Y. 1998). The threshold showing for a mandatory preliminary injunction is much higher because the movant must demonstrate a "clear" or "substantial likelihood of success" before such an injunction may be granted. *See Sunward Elecs. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004); *Tom Doherty Assocs.,* 60 F.3d at 34.

The Second Circuit has repeatedly wrestled with the status quo concept which, it agrees, is relative and variable depending upon the perspective from which it is viewed. *See Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985); *Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988). As one court in this District has noted, "an injunction which orders a party to perform an action it should previously have performed may be characterized as prohibitory, since it does not change the status quo as it would have existed, absent that party's wrongful action." *Padberg v. McGrath-McKechnie*, 108 F. Supp. 2d 177, 184 (E.D.N.Y. 2000). This latter rationale is the one, in the Court's judgment, into which Plaintiffs' argument fits. To obtain a preliminary injunction under Fed. R. Civ. P. 65, however, the movant is traditionally required to show (1) irreparable harm and (2) either (a) that it is likely to succeed on the merits or (b) sufficiently

serious questions regarding the merits of the claim to make them fairly litigable, with the balance

of the hardships tipping decidedly in the movant's favor. *See 1-800 Contacts, Inc. v.*

*WhenU.com, Inc.*, 414 F.3d 400, 406 (2d Cir.), *cert. denied,* 126 S. Ct. 749 (2005); *No Spray*

*Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001); *Federal Express Corp. v.*

*Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000). The Court questions whether

Plaintiffs can meet the irreparable harm threshold since this case has been pending for some 11

months and the current application has not been made on any emergency basis. Nor has there

previously been any request for injunctive relief in this action. In addition, in their request for

relief as set forth in the WHEREFORE Clause of the Complaint, Plaintiffs ask

> 3.      That a judgment be entered requiring the defendants to conduct
> a prompt hearing following the seizure of the property at which
> time the defendants must demonstrate probable cause for the
> seizure of the property and that it was necessary that the property
> remain in the custody of the defendants [see Krimstock v. Kelly,
> 306 F.3d 40, C.A. 2 (N.Y.) 2002].

The interim relief Plaintiffs now seek appears to be identical to one aspect of the ultimate relief

they seek upon final adjudication of this matter. The remaining relief requested in the Complaint

goes to alleged constitutional violations for which the Plaintiffs seek money damages.

A decision whether Plaintiffs should be permitted to proceed with the type of motion

counsel has outlined here is clearly within Judge Bianco's discretion. It appears, however, that

without the benefit of any discovery and no evidentiary hearing having been requested or

conducted to date,[5] such a motion has no grounding in the bare record which currently exists. As

---

[5]      At the conclusion of the July 9, 2009 hearing, the Court directed the parties to provide
responses to each other's discovery requests, but stayed depositions pending a resolution of this
issue.

noted, there are numerous factual disputes at play here and neither Plaintiffs nor Defendants have submitted any documentary or testimonial evidence to support their respective positions. Consequently, there is a substantial question whether this matter is even ripe for motion practice at this juncture.

With respect to Plaintiffs' allegations regarding vehicles seized and retained by Suffolk County as "instrumentalities of an offense," it appears to the Court, after reviewing the extensive legal analysis set forth in the *Krimstock* cases as well as the New York Court of Appeals decision in *Canavan*, that an owner or registrant of such vehicle is entitled to a prompt post-seizure *Krimstock* hearing. And there really is no dispute that Suffolk County Code § 270-26 provides a procedure for the seizing agency to send out notification of the seizure and to promptly schedule a hearing before a neutral magistrate. However, as the parties made clear during both hearings, there is a substantial difference of opinion whether such notice has been distributed and/or whether these hearings have actually been taking place in accordance with the Suffolk County Code provisions. No depositions have been taken and neither party has submitted any affidavits as to these factual issues.

The Court has been able to find only one unreported case dealing with Suffolk County Code § 270-26. In *Sullivan v. County of Suffolk*, No. CV-04-3651, 2006 WL 2844205, at * 1 (E.D.N.Y. June 1, 2006), plaintiff brought an action asserting similar Fourth and Fourteenth Amendment violations based upon the Suffolk County Police Department's arrest of plaintiff's ex-girlfriend in January 2004 for driving while intoxicated. The ex-girlfriend was driving plaintiff's vehicle at the time, purportedly without his knowledge or consent, and the police seized the vehicle as an instrumentality of a crime. *Id.* The seizure took place several months

before *Krimstock I* was decided. Plaintiff sought to file an amended complaint which included "several pages of newly alleged facts concerning the history of Suffolk County's DWI seizure and forfeiture program," *id.* at * 3, and which allegations, the court noted, stemmed from the Second Circuit's decision in *Krimstock I*. The court went on to observe that the Suffolk County Legislature had amended Section 270-26 "to conform with the *Canavan* holding and include the requirement that post-seizure hearings be conducted before a neutral magistrate." *Id*. Although the circumstances regarding the motion to amend are not germane to the instant case, Sullivan is noteworthy in that it confirmed the legislative intent to conform Suffolk County's forfeiture proceedings with the guidance set forth in *Canavan*.

If, upon establishing a more developed evidentiary record, Plaintiffs here still seek such relief, then motion practice may be more timely and warranted, particularly in the form of summary judgment since, as noted, the specific relief sought is really a mirror of one aspect of the ultimate relief sought in the case.. Upon such a showing, Plaintiffs would be in a better position to demonstrate to the Court that Defendants have not been complying with Suffolk County Code § 270-26 and that *Krimstock* hearings should be held with respect to the retention of certain of Plaintiffs' vehicles, which were seized as instrumentalities of their crimes.[6] In the

---

[6] The Complaint avers that Plaintiff Hill had U.S. currency seized by Defendants at the time of his arrest and counsel has not indicated that such currency has been returned. The Court notes that the holdings of *Krimstock* and its progeny only dealt with a claimant's entitlement to a post-seizure hearing in connection with the government's seizure and retention of motor vehicles and not other types of property. *See, e.g.*, *Krimstock I*, 306 F.3d at 61 ("An individual has an important interest in the possession of his or her motor vehicle, which is often his or her most valuable possession.") (internal quotation marks and alterations omitted). However, having reviewed the due process analyses contained in the applicable case law, the Court finds that if Plaintiff Hill can submit evidence to support his allegations, he would have a good faith basis to make a motion to assert his entitlement to a post-seizure hearing with respect to Defendants' retention of his currency. Of course, to the extent Defendants may have released Plaintiff Hill's

interim, there is nothing preventing Plaintiffs from following the existing procedures designated in the County Law or making further inquiries/demands with regard to their vehicles being released through the existing procedures.

With respect to Plaintiffs' allegations regarding vehicles seized and retained by the County as "arrest evidence," the Court notes that, by its terms, Suffolk County Code § 270-26 only applies to vehicles seized as instrumentalities of a crime.[7]  However, the rulings contained in *Krimstock III* and *Krimstock IV* suggest that Plaintiffs would be entitled to some level of post-seizure review of the District Attorney's decision to retain their vehicles as arrest evidence. However, this type of "Krimstock" remedy is once again precisely one element of the ultimate relief Plaintiffs seek in this case.  See WHEREFORE Clause, ¶ 3.   As such, Plaintiffs are not entitled to a premature adjudication of the merits of their claims on a record devoid of any factual findings.

Finally, Plaintiffs Moseley, Follon and Brinson have alleged that their vehicles were seized and retained even though they were not arrested.   It appears from the allegations in the Complaint and from contentions by Defendants' counsel that Plaintiff Follon's car was seized at the time of Plaintiff Jabbour's arrest and was retained as arrest evidence.  Amid the factual disputes underlying these arguments, the type of "Krimstock" remedy Plaintiffs seek must await a final adjudication on the merits.  With respect to the claims of Plaintiffs Moseley and Brinson, the Complaint avers that those Plaintiffs' vehicles were released from Suffolk County's

---

currency from their possession, such issue would be moot.

[7]      In addition, the New York Court of Appeal's ruing in *Canavan* only dealt with vehicles seized as "instrumentalit[ies] of the crime of drunk driving."  *Canavan*, 1 N.Y.3d at 142.

possession. *See* Compl. ¶¶ 46, 77. Thus, although these Plaintiffs will have the opportunity to establish constitutional violations that they claim occurred in connection with the seizure and retention of their vehicles,[8] their claims for a post-seizure hearing are moot.

## V.   CONCLUSION

Accordingly, for the reasons set forth above, I respectfully recommend to Judge Bianco that Plaintiffs' request to make the motion they contemplate be DENIED as premature, particularly since Plaintiffs have procedures available in Suffolk County to address the concerns they raise regarding the return of their property if they do not wish to await a full adjudication on the merits of their civil rights claims here.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joseph F. Bianco, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the (10) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

---

[8]    This Court does not pass any judgement as to the viability of such claims.

**SO ORDERED.**

Dated: Central Islip, New York
        September 1, 2009


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge